O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| **CRUZ LOBATO,** | ) | NO. SACV 11-01337-MAN |
| | ) | |
| Plaintiff, | ) | |
| | ) | MEMORANDUM OPINION |
| v. | ) | |
| | ) | AND ORDER |
| **MICHAEL J. ASTRUE,** | ) | |
| **Commissioner of Social Security,** | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

Plaintiff filed a Complaint on September 14, 2011, seeking review of the denial by the Social Security Commissioner ("Commissioner") of plaintiff's application for a period of disability ("POD") and disability insurance benefits ("DIB"). On October 4, 2011, the parties consented to proceed before the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). On August 7, 2012, the parties filed a Joint Stipulation, in which: plaintiff seeks an order reversing the Commissioner's decision and awarding benefits or, in the alternative, remanding the matter for further administrative proceedings; and defendant seeks an order affirming the Commissioner's

decision or, in the alternative, remanding the matter for further administrative proceedings. The Court has taken the parties' Joint Stipulation under submission without oral argument.

**SUMMARY OF ADMINISTRATIVE PROCEEDINGS**

On October 31, 2006, plaintiff filed an application for POD and DIB. (Administrative Record ("A.R.") 81-85.) In the disability report accompanying her application, plaintiff alleged shoulder injury, learning disorder, stress, and dyslexia as impairments and asserted that she cannot work due to these impairments, because she cannot perform assigned tasks and cannot read and write. (A.R. 94.) At the reconsideration level, plaintiff additionally alleged that she suffers from depression, which commenced in April 2006. (A.R. 94, 135.)

The Commissioner denied plaintiff's claim initially, and upon reconsideration. (A.R. 33-36, 42-45.) On July 3, 2008, plaintiff, who was represented by counsel, testified at a hearing before Administrative Law Judge Barry S. Brown ("ALJ Brown"). (A.R. 15-30.) On October 8, 2008, ALJ Brown denied plaintiff's claim. (A.R. 4-13.) Subsequently, the Appeals Council denied plaintiff's request for review of ALJ Brown's decision. (A.R. 1-3.)

On January 7, 2009, plaintiff sought review in this Court, which remanded the case for further proceedings in a September 8, 2010 Order

1  ("Remand Order").[1]  (A.R. 450-70.)

3      On September 20, 2010, the Appeals Council effectuated the Court's Remand Order, and remanded the matter to the ALJ for further actions consistent with the Order.  (A.R. 446-48.)

7      On April 4 and May 5, 2011, a remand hearing was held before ALJ Joseph Lisiecki ("ALJ").  (A.R. 425-32, 433-45.)  Plaintiff, who was represented by an attorney, appeared and testified at both hearings. (*Id.*)  At the April hearing, Stephen Wells, a medical expert, testified. (A.R. 425-32.)  At the May hearing, Craig C. Rath, a medical expert, and Alan L. Ey, a vocational expert, also testified.  (A.R. 433-45.)  On June 13, 2011, the ALJ issued an unfavorable decision.  (A.R. 376-85.)

**SUMMARY OF ADMINISTRATIVE DECISION**

The ALJ found that plaintiff last met the insured status requirements of the Social Security Act on December 31, 2005, and that she had not engaged in substantial gainful activity during the period from her alleged onset date of October 30, 2000, through December 31, 2005, her date last insured ("DLI").  (A.R. 379.)  The ALJ also found that, through the DLI, plaintiff has the severe impairment of "attention

---

[1] It appears that plaintiff filed a subsequent application for DIB as well as for supplemental security income, dated March 12, 2009, alleging depression, attention deficit hyperactivity disorder, lupus, arthritis, vision impairment, inability to read at normal level, learning disability, back, neck and shoulder injury, foot and leg problems, spinal and back damage, and sleep deprivation.  (A.R. 538-60.)  The applications do not appear to be before this Court, as neither plaintiff or defendant discuss these applications in their Joint Stipulation and there are no other documents in the record indicating the outcome of this application.

deficit hyperactivity disorder, inattentive type" ("ADHD").[2] (*Id.*) The ALJ further found that, through the DLI, plaintiff did not have an impairment or combination of impairments that met or medically equaled the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, the Listing of Impairments. (A.R. 380.)

After reviewing the record, the ALJ determined that plaintiff has the residual functional capacity ("RFC") to "perform a full range of work at all exertional levels but with the following nonexertional limitations: [plaintiff] is precluded from working at unprotected heights or around dangerous or fast-moving machinery; [plaintiff] must not be responsible for the safety operations of others; and [plaintiff] requires the ability to learn tasks by example, not by reading." (A.R. 381.)

The ALJ found that plaintiff's past relevant work ("PRW") as a Cleaner, Commercial or Institutional ("Cleaner") does not require the performance of work-related activities precluded by her RFC. (A.R. 384.) Accordingly, the ALJ concluded that plaintiff has not been under a disability, as defined in the Social Security Act, since October 30, 2000, the alleged onset date, through December 31, 2005, the DLI. (A.R. 385.)

---

[2] With respect to plaintiff's other claimed impairments, the ALJ stated that the "prior ALJ found, in a decision dated October 8, 2008, that [plaintiff] had the non-severe medically determinable impairments of status post cervical sprain and status post left shoulder strain," and he incorporated that finding -- which has not been challenged by plaintiff -- by reference. (A.R. 379.)

# STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether it is free from legal error and supported by substantial evidence in the record as a whole. Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Id. (citation omitted). The "evidence must be more than a mere scintilla but not necessarily a preponderance." Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003). While inferences from the record can constitute substantial evidence, only those "'reasonably drawn from the record'" will suffice. Widmark v. Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006)(citation omitted).

Although this Court cannot substitute its discretion for that of the Commissioner, the Court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion." Desrosiers v. Sec'y of Health and Human Servs., 846 F.2d 573, 576 (9th Cir. 1988); see also Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." Andrews v. Shalala, 53 F.3d 1035, 1039-40 (9th Cir. 1995).

The Court will uphold the Commissioner's decision when the evidence is susceptible to more than one rational interpretation. Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). However, the Court may review only the reasons stated by the ALJ in his decision "and may not

affirm the ALJ on a ground upon which he did not rely." <u>Orn</u>, 495 F.3d at 630; *see also* <u>Connett</u>, 340 F.3d at 874. The Court will not reverse the Commissioner's decision if it is based on harmless error, which exists only when it is "clear from the record that an ALJ's error was 'inconsequential to the ultimate nondisability determination.'" <u>Robbins v. Soc. Sec. Admin.</u>, 466 F.3d 880, 885 (9th Cir. 2006)(*quoting* <u>Stout v. Comm'r</u>, 454 F.3d 1050, 1055-56 (9th Cir. 2006)); *see also* <u>Burch</u>, 400 F.3d at 679.

**DISCUSSION**

Plaintiff alleges the following issues: (1) whether the ALJ properly determined that plaintiff is capable of performing her PRW as a Cleaner; (2) whether the ALJ properly developed the record regarding plaintiff's learning disability and dyslexia; and (3) whether the ALJ properly considered plaintiff's testimony. (Joint Stipulation ("Joint Stip.") at 3.)

**I.  The ALJ Committed No Reversible Error In Determining That Plaintiff Could Perform Her PRW As A Cleaner, Commercial Or Institutional**.

Plaintiff asserts that the ALJ improperly determined that she could perform her PRW as a Cleaner. (Joint Stip. at 3-6.) Specifically, plaintiff alleges that the job of Cleaner is inconsistent with her RFC precluding work "around dangerous or fast-moving machinery." (Joint Stip. at 4.)

At step four of the sequential evaluation process, a claimant bears the burden of proving that he or she can no longer perform his or her PRW. Pinto v. Massanari, 249 F.3d 840, 844 (9th Cir. 2001). Notwithstanding the claimant's burden at this step, the ALJ still has a duty to make the requisite factual findings to support his or her conclusion regarding the claimant's ability to perform his or her PRW. *Id.* (citation omitted).  A claimant must be able to perform: (1) "[t]he actual functional demands and job duties of a particular past relevant job"; or (2) "[t]he functional demands and job duties of the occupation as generally required by employers throughout the national economy." *Id.* at 845 (citation omitted). Accordingly, the ALJ must make "specific findings as to the claimant's [RFC], the physical and mental demands of the [PRW], and the relation of the [RFC] to the past work."  *Id.* (citation omitted)  The ALJ need only make findings as to either general or actual performance of past relevant work, but not both.  *Id.* ("We have never required explicit findings at step four regarding a claimant's past relevant work both as generally performed *and* as actually performed.").

In general, an ALJ should consider first whether claimant can perform his or her PRW as actually performed and then as generally performed.  Pinto, 249 F.3d at 845.  Typically, the best source for how a job is generally performed is the Dictionary of Occupational Titles (the "DOT").  *Id.* at 845-46; Social Security Ruling ("SSR") 00-4p, 2000 WL 1898704, at *2 (noting that "we rely primarily on the DOT . . . for

information about the requirements of work in the national economy").[3] Although occupational evidence provided by a vocational expert is generally expected to be consistent with the DOT, "[n]either the DOT nor the [vocational expert's] evidence automatically 'trumps' when there is a conflict." *Id.*, at *2. An ALJ may rely on two sources "to define a claimant's past relevant work as actually performed: a properly completed vocational report, SSR 82-61, and the claimant's own testimony, SSR 82-41." Pinto, 249 F.3d at 845. The vocational expert merely has to find that a claimant can or cannot continue his or her past relevant work as defined by the regulations. *See* Villa v. Heckler, 797 F.2d 794, 798 (1986)("[t]he claimant has the burden of proving an inability to return to his former type of work and not just to his former job").

Here, the ALJ determined that plaintiff could perform her PRW as a Cleaner as actually and generally performed. (A.R. 385.) Plaintiff asserts that this finding is error, because she was precluded from working around dangerous or fast-moving machinery, but as defined in the DOT, the job of Cleaner "may" require a worker to: (1) "cut and trim grass, and shovel snow, using power equipment or handtools;" (2) "use a lawnmower, to cut the grass, which has very fast moving blades;" (3) use a "weedwacker, in trimming grass [which] may also be considered fast moving equipment"; and (4) use "snowblowers[, which] are fast-moving equipment and may also be dangerous." (Joint Stip. at 4-5.) These

---

[3] Social Security Rulings do not have the force of law. Nevertheless, they "constitute Social Security Administration interpretations of the statute it administers and of its own regulations." Han v. Bowen, 882 F.2d 1453, 1457 (9th Cir. 1989). Accordingly, they are given deference, "unless they are plainly erroneous or inconsistent with the Act or regulations." *Id.*

asserted inconsistencies do not render the ALJ's step four finding erroneous.  Although the description of the Cleaner job in the DOT may suggest that plaintiff would have difficulty performing that job as it is sometimes performed in the national economy, this possibility does not preclude a finding that plaintiff could return to her job as she *actually* performed it.  As to the latter determination, as noted above, the two sources of information which may be used to define a claimant's past relevant work as actually performed are a properly completed vocational report and the claimant's own testimony.  <u>Pinto</u>, 249 F.3d at 845.  Here, in her work history report completed in November 2006, plaintiff reported that her job as a "custodian," required that she "dust, clean [chalkboards] and rails, clean [and] disinfect furniture, wash walls [and] graffiti, move furniture, vacuum, remove spots on rugs, pick-up trash, and use extractor on carpets, mop, sweep, windows, miniblinds." (A.R. 117-18.)  These demands would not require plaintiff to handle dangerous or fast-moving machinery.

Accordingly, it was not unreasonable for the ALJ to conclude that plaintiff's preclusion from handling dangerous or fast-moving machinery would not prevent her from performing the actual functional demands and job duties of her PRW as a Cleaner.  No reversible error, therefore, can be found based on plaintiff's first issue.

**II.  The ALJ Properly Developed The Record Regarding Plaintiff's Alleged Learning Disorder And Dyslexia.**

An ALJ has an independent duty to fully and fairly develop the record and to assure that the claimant's interests are considered, even

when the claimant is represented, as in this case. <u>Tonapetyan v. Halter</u>, 242 F.3d 1144, 1150 (9th Cir. 2001). However, an ALJ's duty to develop the record further is triggered "only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." <u>Mayes v. Massanari</u>, 276 F.3d 453, 459-60 (9th Cir. 2001).

The ALJ found that the date on which plaintiff was last insured was December 31, 2005 -- a finding that are uncontested in this action. (A.R. 379.) Thus, plaintiff had to establish she had a disability on or before that date in order to be entitled to DIB. The initial mental evaluation and commencement of psychiatric treatment by plaintiff's treating psychiatrist, Clayton Chau, M.D. did not occur until June 6, 2006, well after plaintiff's DLI. (A.R. 367-72, 379.) Dr. Chau diagnosed plaintiff with major depressive disorder; post-traumatic stress disorder; ADHD, predominantly inattentive type; dissociative disorder, NOS; and bipolar II disorder. (A.R. 372.)

In its Remand Order, the Court noted that there was "no evidence in the record of any psycho-educational or IQ testing of plaintiff" or that "plaintiff, prior to her DLI, was treated for any learning disorder." (A.R. 462.) As the Court further noted, plaintiff's testimony that she cannot read or write (despite completing high school) and was "always" included in special education classes, when coupled with Dr. Yun's finding regarding plaintiff's limited comprehension span, suggested that plaintiff suffered from a learning disorder before her

DLI.[4] (A.R. 462.) Thus, the ALJ had "before him at least some evidence indicating that plaintiff does suffer from some sort of learning disorder or other condition that impairs her ability to read and write and, relatedly, her comprehension abilities," which the ALJ had failed to consider at step two. (A.R. 463.) As a result, the Court ordered the ALJ to: (1) develop the record regarding plaintiff's alleged learning disorder and dyslexia; (2) properly address plaintiff's claimed mental impairments, *to wit*, her asserted learning disorder, dyslexia, inability to read and write, special education, and/or low comprehension ability ("Claimed Mental Impairment"); and (3) consider the impact of all of plaintiff's impairments on her ability to engage in and sustain full-time work. (A.R. 469.) Plaintiff now argues that the ALJ failed to comply with the Remand Order, because he did not develop the record regarding plaintiff's claimed learning disorder and dyslexia, and he failed to order that "plaintiff undergo psycho-educational or IQ testing or continu[e] the hearing to supplement the record to accurately and appropriately determine plaintiff's current status of her Claimed Mental Impairment." (Joint Stip. at 9.)

In response to the Remand Order, the ALJ sought the assistance of medical expert Craig Rath, M.D. to assess and render an opinion regarding plaintiff's asserted mental impairments. (A.R. 379, 436-37.) Dr. Rath stated that he had examined plaintiff's medical records for evidence of learning disability and dyslexia, and "those particular

---

[4] On October 16, 2007. Kyu Ho Yun, M.D., a doctor of internal medicine and radiology and plaintiff's treating physician, completed a "Medical Opinion Re: Ability To Do Work-Related Activities (Physical)," in which he noted that plaintiff has "low comprehension span, cannot read to understand clear and concise directive. Needs to be shown, however, still has problem." (A.R. 353.)

issues." (A.R. 437.) He observed that plaintiff had been diagnosed with "Attention Deficit Hyperactivity Disorder, inattentive type," and she had been treated with Strattera, "which is consistent with ADHD." (*Id.*) Dr. Rath recounted plaintiff's statement that she was "put in Special Education for problems," but the real problem, according to plaintiff's self-reporting, seemed to be that her mind would wonder and she would daydream a lot. (A.R. 438.) Dr. Rath opined that this circumstance was "more consistent with ADHD, inattentive type, than a specific learning disability." (*Id.*) He explained that, although "learning disabilities are correlated with ADHD, so the fact that ADHD is present makes it more likely there's a learning disability," there was no indication in plaintiff's medical records of a learning disability prior to the DLI.[5] (A.R. 441.) Dr. Rath opined that plaintiff would have some problems focusing, but that problem "was not very severe," and therefore, the only limitation he found appropriate was to "give the safety precautions of heights, dangerous moving equipment, not in charge of safety operations of others." (A.R. 438.)

The ALJ relied on Dr. Rath's opinion in determining that plaintiff had a severe impairment of ADHD prior to her DLI, and that there was no evidence to support the existence of her claim of having the impairments of learning disability and dyslexia prior to her DLI. (A.R. 379, 382.) Dr. Rath's opinion constituted substantial evidence upon which the ALJ could rely. *See* Tonapetyan, 242 F.3d at 1149 (holding that opinions of nontreating or nonexamining doctors may serve as substantial evidence

---

[5] In response to plaintiff's assertion that she was in "a special school all [her] life," Dr. Rath specifically noted that "somebody can go to a special school for ADHD." (A.R. 441.)

when consistent with independent clinical findings or other evidence in the record); see also Andrews, 53 F.3d at 1041 ("reports of the nonexamining advisor need not be discounted and may serve as substantial evidence when they are supported by other evidence in the record and are consistent with it").

Moreover, as noted by the ALJ, despite knowing that the significant issue on remand was that insufficient evidence supported plaintiff's allegations regarding the Claimed Mental Impairment, plaintiff still failed to submit school records or medical evidence documenting any learning disorder or dyslexia, or other mental impairment, which existed prior to her DLI. (A.R. 379 n.2.) Rather, plaintiff submitted treatment records from Cypress Family Counseling and Dr. Kris Hans Khurana dated well after her POD and DLI, which failed to reveal the existence of such impairments prior to plaintiff's DLI. (A.R. 570-603, 604-16, 617-19.) Thus, the ALJ did not err in finding that these records likewise did not support a finding of any other Claimed Mental Impairment during the relevant time period. (A.R. 379 n.2.) Plaintiff had ample opportunity between the date of the September 2010 Remand Order and the ALJ's June 2011 decision to supplement the record regarding the existence, nature, and extent of her alleged learning disorder and dyslexia prior to her DLI, and she failed to do so.

Although the ALJ has an obligation to assist in developing the record, the claimant has the burden of proving that he or she became disabled before the expiration of her insurance. See Tidwell v. Apfel, 161 F.3d 599, 601 (9th Cir. 1998). Therefore, an ALJ does not fail in his duty to develop the record by not seeking evidence or ordering

further examination or consultation regarding a claimed mental impairment, if no medical evidence indicates that such an impairment exists. *See* Ukolov v. Barnhart, 420 F.3d 1002, 1005 (9th Cir. 2005); 20 C.F.R. § 404.1508 ("[a] physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [a claimant's] statement of symptoms"); SSR 96-4p, 1996 WL 374187, at *1 ("regardless of how many symptoms an individual alleges, or how genuine the individual's complaints may appear to be, the existence of a medically determinable physical or mental impairment cannot be established in the absence of objective medical abnormalities; *i.e.*, medical signs and laboratory findings").

Plaintiff's testimony alone did not trigger the ALJ's duty to develop the record on this issue, because there was no objective evidence that plaintiff suffered from a learning disorder and/or dyslexia. The only arguable "evidence" in the record was plaintiff's testimony, which the ALJ found, as discussed *infra*, had credibility problems. As a result, there was no credible evidence in the record that plaintiff suffered from a learning disorder and dyslexia, and the ALJ was not obligated to further develop the record on this issue, including ordering that plaintiff undergo psycho-educational or IQ testing. Accordingly, the ALJ did not commit reversible error and plaintiff's second issue does not warrant reversal.

///
///
///
///
///

**III. The ALJ Provided The Requisite Clear And Convincing Reasons For Rejecting Plaintiff's Subjective Pain Testimony**.

In her third issue, plaintiff argues that the ALJ erred in his consideration of her subjective symptom testimony. For the reasons set forth below, the Court disagrees.

Once a disability claimant produces objective medical evidence of an underlying impairment that is reasonably likely to be the source of claimant's subjective symptom(s), all subjective testimony as to the severity of the symptoms must be considered. Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004); Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir. 1991); *see also* 20 C.F.R. § 404.1529(a) (explaining how pain and other symptoms are evaluated). "[U]nless an ALJ makes a finding of malingering based on affirmative evidence thereof, he or she may only find an applicant not credible by making specific findings as to credibility and stating clear and convincing reasons for each." Robbins, 466 F.3d at 883. The factors to be considered in weighing a claimant's credibility include: (1) the claimant's reputation for truthfulness; (2) inconsistencies either in the claimant's testimony or between the claimant's testimony and her conduct; (3) the claimant's daily activities; (4) the claimant's work record; and (5) testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which the claimant complains. *See* Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002); *see also* 20 C.F.R. § 404.1529(c).

The ALJ found that "[a]fter careful consideration of the evidence . . . [plaintiff]'s medically determinable impairment could reasonably be expected to cause the alleged symptoms" (A.R. 381.) Further, the ALJ cited no evidence of malingering by plaintiff. Accordingly, the ALJ's reason(s) for rejecting plaintiff's credibility must be "clear and convincing."

Plaintiff testified that she cannot drive by herself, gets lost when driving unless someone else is with her to help her navigate, obtained a driver's license even though she cannot read and write at all, cannot write a simple note to advise a family member of her whereabouts, cannot pay bills and her husband and mother take care of that for her, and could only perform her job in the past by relying on co-workers to read things for her. (A.R. 438-42.) The ALJ found that plaintiff's "statements concerning the intensity, persistence and limiting effects of [her] symptoms are not credible to the extent they are inconsistent with [the ALJ's RFC] assessment." (A.R. 382.) The ALJ specifically articulated multiple, legally sufficient reasons for declining to credit plaintiff's statements regarding the extent of the limitations and their impact on her ability to work.

First, the ALJ noted that there were "some significant inconsistencies between [plaintiff's] testimony and other evidence," thus detracting from her credibility. (A.R. 384.) For example, plaintiff testified that she is not able to pay bills; however, the record shows that plaintiff told Dr. Chau, "I do the bills at home. I

make sure the bill is paid. I know how to survive." (A.R. 372, 382.)[6] In addition, plaintiff testified at the July 2008 hearing that her husband mops, because she is unable to do so; however, she reported to her treating psychiatrist Dr. Chau, on two different occasions, that her husband does "not do any housework." (A.R. 356, 366.) Additionally, plaintiff testified that she could perform only limited daily activities (A.R. 419-20), but as reported by her sister, Yolanda Jordan, plaintiff is able to get her children ready for school, prepare their breakfast, take them to school, clean the house, make snacks for the children, do laundry, and prepare dinner. (A.R. 100, 102, 383.) Plaintiff's sister also reported -- contrary to plaintiff's testimony -- that plaintiff can drive alone and, further, can shop for groceries on her own. (A.R. 103.) The ALJ also noted where "Ms. Jordan checked the boxes for activities affected by [plaintiff's] alleged impairments, she only checked the boxes for 'lifting,' and did not check the boxes for memory, completing tasks, concentration, or following instructions." (A.R. 105, 383). These inconsistencies between the evidence of record and plaintiff's testimony, as found by the ALJ, were a valid reason for finding that plaintiff lacked credibility. *See, e.g.,* Berry v. Astrue, 622 F.3d 1228, 1234-35 (9th Cir. 2010)(credibility was undermined by self-reported activities that suggested a greater functional capacity than claimed in testimony); Morgan v. Comm'r, 169 F.3d 595, 600 (9th Cir. 1999)(holding that contradictions between reported activities and asserted limitations calls credibility into question).

---

[6] The ALJ acknowledged plaintiff's testimony that she did not tell anyone she pays the bills but found it "not credible," given the detailed notes Dr. Chau had made regarding his discussions with plaintiff. (A.R. 382.)

The ALJ also found that plaintiff's credibility was undermined by inconsistencies with respect to her claimed inability to read and write. (A.R. 384.) At the May 2011 hearing, plaintiff testified that she cannot read and write at all. (A.R. 438.) However, when asked if she ever learned to read and write, plaintiff responded that she "learned," and "they taught me, but I forget." (A.R. 438-39.) Plaintiff also testified that she took and passed her driver's license examinations in English. (A.R. 439.) Plaintiff testified that she had a special education teacher help her everyday to study for the license examination, but that if she went to get a license now, she would not be able to. (*Id*.) Further, plaintiff testified that she graduated from high school in "special ed." (A.R. 441.) The ALJ concluded that plaintiff's test-taking ability and high school graduation, as well as her admission that she learned to read and write, cast doubt her testimony that she cannot read and write at all. (A.R. 384.) Although plaintiff may disagree with the ALJ's conclusion, the Court may not overturn it, because it is rational and supported by the record. Magallanes v. Bowen, 881 F.2d 747, 750 (9th Cir. 1989).

The ALJ likewise properly inferred from the fact of plaintiff's gainful employment as a janitor for 15 years that, because her alleged mental impairments had not prevented her from working during that time, this suggests that such impairments would not currently render her unable to work. (A.R. 384.) As noted by the ALJ, despite plaintiff's contention that she suffered from mental impairments for many years prior to when she stopped working, plaintiff continued to work at her job as a janitor until October 2000, and no medical evidence suggested that she stopped working because of any mental impairment. (*Id*.) *See*

Bean v. Chater, 77 F.3d 1210, 1213 (10th Cir. 1995)(claimant's prior work record can be considered in evaluating credibility; ALJ did not err in considering that claimant quit working several years before the alleged onset of disability).  The ALJ did not err in exercising reasonable judgment and concluding from the evidence of plaintiff's lengthy work history that she was not as limited as she alleges. Again, while this may not be the only interpretation of the evidence, it is a reasonable interpretation of the evidence, and the Court must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation.  Magallanes, 881 F.2d at 750.

   Finally, as discussed above, the ALJ found that the medical evidence failed to fully support plaintiff's claimed limitations.  *See* Lewis v. Apfel, 263 F.3d 503, 511 (9th Cir. 2001)(one reason for which an ALJ may discount testimony is that it conflicts with medical evidence).  The ALJ stated that there was no evidence in the record of plaintiff's alleged learning disorder and dyslexia. (A.R. 382.)  There was no record of any psycho-educational or IQ testing of plaintiff, or any medical records, prior to plaintiff's DLI and during the POD, that established she was diagnosed with and/or treated for any of her alleged mental impairments, with the exception of her ADHD.[7]  (*Id.*)

---

[7]   The ALJ rejected Dr. Chau's opinion regarding plaintiff's mental limitations, because "Dr. Chau first examined and treated [plaintiff] well after the DLI."   (A.R. 383.)   The ALJ also rejected Dr. Yun's opinion -- that plaintiff had a "low comprehension span" and "cannot read to understand clear and concise directive. Needs to be shown, however still has problem" -- because this opinion was "well outside the period of adjudication, outside the area of Dr. Yun's expertise, and was not expressly or implicitly supported by any relevant objective medical evidence."  (A.R. 383.)   The ALJ did not err in this respect.  *See* Carmickle v. Comm'r, 533 F.3d 1155, 1165 (9th Cir.2008) (noting that "[m]edical opinions that predate the alleged onset of disability are of

In sum, when, as here, the ALJ's credibility determination is reasonable and supported, it is not the Court's role to second-guess it. *See* <u>Rollins v. Massanari</u>, 261 F.3d 853, 857 (9th Cir. 2001). Reversal is not warranted on this basis.

## CONCLUSION

For the foregoing reasons, the Court finds that the Commissioner's decision is supported by substantial evidence and is free from material legal error. Neither reversal of the Commissioner's decision nor remand is warranted.

Accordingly, IT IS ORDERED that Judgment shall be entered affirming the decision of the Commissioner of the Social Security Administration. IT IS FURTHER ORDERED that the Clerk of the Court shall serve copies of this Memorandum Opinion and Order and the Judgment on counsel for plaintiff and for the Commissioner.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED: November 30, 2012

_____
MARGARET A. NAGLE
UNITED STATES MAGISTRATE JUDGE

---

limited relevance").